**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**
_____

ROY BLACK, # 140652,

    Petitioner,

v.                                                                       Case No. 16-10407

DEWAYNE BURTON,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan prisoner Roy Black filed this habeas corpus petition under 28 U.S.C. § 2254. Petitioner, who is proceeding *pro se*, was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He raises four claims for habeas corpus relief. Because the court finds these claims lack merit, it will deny the petition. The court will also deny a certificate of appealability.

## I. BACKGROUND

Petitioner's convictions arise from the shooting death of Marlon Jones. The Michigan Court of Appeals summarized the evidence presented at trial as follows:

> On the afternoon of January 4, 2012, Marlon Jones drove to Superior Street in the city of Detroit with his friend Eugene Rice to purchase drugs. Rice exited the vehicle and traversed a vacant lot to meet a drug dealer. Defendant then drove up alongside Jones's vehicle, with Gregory Currie in the passenger seat. All four men were acquainted, but defendant and Jones had a falling out the previous year. Defendant and Rice exchanged greetings as Rice returned to Jones's car. Despite the presence of

witnesses, defendant removed a handgun from his left sleeve and shot Jones in the head three times. Rice ran away and called 911. Currie claimed that he was so intoxicated that he slept through the incident, barely hearing the gunshots. Another witness, George O'Neal, testified that he saw the shooting from the porch of a vacant home he had visited that day to use heroin. Authorities arrived approximately 30 minutes later and pronounced Jones dead at the scene.

*People v. Black*, No. 313449, 2015 WL 1814037, at *1 (Mich. Ct. App. Apr. 21, 2015).

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree premeditated murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. The court sentenced him to life in prison for the first-degree murder conviction, 3 years 4 months to 5 years for the felon-in-possession conviction, and 2 years for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising two claims: (i) the trial court's failure to explain to Petitioner why he would be prejudiced by remaining in jail clothing during trial denied him his right to due process; and (ii) the trial court erred in replacing a seated juror with a dismissed juror without ensuring the replacement juror was free from outside influence and without instructing the jury it must begin its deliberations anew. The Michigan Court of Appeals, on its own motion, remanded the matter to the trial court for an evidentiary hearing regarding the alternate juror issue. *See* 3/7/14 Order (Dkt. #8-18, PageID 719). On remand, the trial court held an evidentiary hearing, following which the trial court held that the process used to replace the juror complied with Michigan Court Rule 6.411. *See* 11/24/14 Tr. at 8–9 (Dkt. #8-17).

Upon return to the Michigan Court of Appeals, Petitioner filed a supplemental brief, raising these additional claims: (i) Petitioner's exclusion from the proceedings

regarding the recall of the alternate juror violated his right to be present; and (2) counsel was ineffective in failing to inform Petitioner about the recall of the alternate juror. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Black*, 2015 WL 1814037 (Mich. Ct. App. Apr. 21, 2015). The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Black*, 498 Mich. 906 (2015).

Petitioner then filed the pending habeas petition, and, with leave of court, an amended petition. The petition and amended petition raise these claims:

> I. Petitioner was denied his state and federal constitutional rights to due process when the trial judge failed to explain to him why he would be prejudiced by remaining in the jail clothing in which he was brought to the courtroom, telling him repeatedly that he was "old enough" to make his own decisions.
>
> II. Petitioner was denied his state and federal constitutional rights to a 12-person jury and to an unbiased jury when the trial court replaced a seated juror with an unequivocally dismissed juror without ensuring that the replacement juror was free from outside influence, and when the court did not instruct the newly constituted jury that it must begin its deliberations anew.
>
> III. Petitioner's due process rights under the 14th Amendment were violated when he was absent from the critical stage of juror substitution proceedings.
>
> IV. Petitioner's 6th Amendment right to the effective assistance of counsel was violated when counsel failed to consult with him prior to agreeing to replace a late juror with an alternate.

## II. STANDARD

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

3

> to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (O'Connor, J., concurring). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation and citation omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . .

4

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Although § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, a federal court may grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

### A. Jail Clothing

Petitioner's first claim concerns his appearance at trial in a jail jumpsuit. He argues that his due process rights were violated when the trial court failed to advise him he would be prejudiced by remaining in jail clothing for his trial.

On the day the trial began, the trial court questioned Petitioner about his jail clothing. When the court learned that Petitioner did not have other clothes to wear, the court offered him a shirt, suit, and tie. Petitioner declined the offer and several times

5

expressed his desire to wear his jail clothing. Respondent argues that Petitioner's choice to appear in his jail clothing constitutes a waiver of this claim. The Michigan Court of Appeals held that Petitioner's choice resulted in a waiver because it was an "intentional relinquishment or abandonment" of his right to wear civilian clothes. *Black*, 2015 WL 1814037 at *2 (citation omitted). In addition, the Michigan Court of Appeals held that "[t]he trial court bore no duty to specifically warn defendant about the danger of prejudice facing a criminal defendant appearing before the jury in jail garb." *Id.*

Due process precludes a defendant from being compelled to stand trial in jail or prison garb as long as the defendant makes a timely objection. *Estelle v. Williams*, 425 U.S. 501, 512 (1976). Compelling a defendant to appear in prison garb impairs the presumption of innocence guaranteed under the Fourteenth Amendment because it presents the unacceptable risk of affecting a juror's judgment and furthers no essential state policy. *Id.* at 503–05. No constitutional violation occurs, however, where the defendant chooses to be tried in jail attire. *Id.* at 507–08. "The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments . . . . [I]t is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id.* (citations omitted).

A defendant's failure to object or desire to be tried in prison garb negates the presence of compulsion necessary to establish a constitutional violation. *Id.* at 512–13. Further, there exists no constitutional requirement that a court advise a defendant of the risks of appearing before the jury in jail clothing. *See id.* at 512. Since the Michigan

6

Court of Appeals' decision was not contrary to or an unreasonable application of clearly established Federal law, habeas relief will be denied on this claim.

### B. Seating of Replacement Juror

Petitioner argues that his state and federal rights to a 12-person and unbiased jury were violated when the trial court replaced a tardy juror with a previously dismissed alternate juror without ensuring that the replacement juror was free from outside influence and without instructing the jurors that they must begin deliberations anew.

At the close of arguments, the trial court instructed the jury and then randomly chose two jurors—Andrew Nagy and Aed Dudar—to excuse as alternates. At approximately 3:30 p.m., the remaining jurors retired to the jury room to begin deliberations. They were dismissed for the day a half hour later. The following morning, October 12, 2012, a juror failed to appear and the court recalled one of the alternate jurors, Aed Dudar, to replace the absent juror. The record does not show what time the newly-constituted jury began deliberations. At 1:24 p.m., the jury returned to the courtroom to enter its verdict.

Petitioner first argues that the substitution of Dudar for the absent juror violated his right to a 12-person jury. This claim does not warrant habeas relief because there is no Sixth Amendment right to a specific number of jurors. *Williams v. Florida*, 399 U.S. 78, 86 (1970).

Petitioner next argues that the trial court violated his right to a fair and impartial jury when it failed to ensure that the replacement juror was free from outside influence and when it failed to instruct the jury to begin its deliberations anew. For reasons unclear from the record, no trial court transcript exists for the proceeding replacing the

7

absent juror, seating Dudar, and reconvening the newly-constituted jury. The Michigan Court of Appeals remanded the case to the trial court for an evidentiary hearing regarding this issue. Six witnesses testified at the hearing: the two alternate jurors (Andrew Nagy and Aed Dudar), the jury foreperson (Joseph Bauman), Petitioner, the prosecutor, and defense counsel.

Dudar testified that he believed that when he was dismissed as an alternate juror the trial court instructed him not to discuss the case with anyone outside the jury room. *See* 7/11/14 Tr. at 12 (Dkt. #8-13). Between the time he was released from the jury and his return the following day, he did not discuss the case with anyone. *Id.* at 12–13. He did not recall whether the trial court reinstructed the jury once he was recalled. *Id.* at 15–16, 19.

Joseph Bauman, the jury foreperson, testified that deliberations began at 3:30 on October 11, 2012. The jury was sent home at approximately 4:00 p.m. During that half hour time period, the jury did not begin any "meaningful deliberations." *See* 8/15/14 Tr. at 17 (Dkt. #8-14). They only read the instructions, chose a foreperson, and discussed what evidence the jury might want recalled. *Id.* at 16–17. Bauman recalled that once the replacement juror was seated in the jury box, the court gave the jury instructions on how to proceed with their deliberations, but Bauman did not recall the specific instructions. *Id.* at 12, 16.

Petitioner testified that he learned about the juror substitution at approximately noon on October 12, 2012, from a deputy. *See* 10/10/14 Tr. at 3 (Dkt. #8-15). His attorney did not discuss the substitution with him. *Id.* at 4.

Kenyatta Stanford, the prosecutor, testified that when the replacement juror was called back to the courtroom, the remaining jurors were brought into the jury box and the trial court instructed the newly-constituted jury to deliberate together. *See* 7/11/14 Tr. at 25 (Dkt. #8-13). She recalled that defense counsel was present for these instructions but not whether Petitioner was present. *Id.*

Defense counsel, Claude Chapman, testified that he did not object to replacing the tardy juror with an alternate. 8/15/14 Tr. at 8 (Dkt. #8-14). He recalled that Petitioner was present in the courtroom when the decision was made. *Id.* at 9. After the alternate juror was summoned, he took a seat with the rest of the jury in the jury box. *Id.* at 10. The judge informed the jury that the alternate would become part of the jury. *Id.* The judge also gave additional instructions, but Chapman did not recall the nature of these instructions. *Id.* at 11.

The trial court ultimately concluded that it had followed the procedures of Michigan Court Rule 6.411 and that the jury had "rendered a fair and unanimous verdict." *See* 11/24/14 at 8 (Dkt. #8-17). The case was returned to the Michigan Court of Appeals.

The Michigan Court of Appeals held that, based upon the record, it could not find with certainty that the trial court complied with Mich. Ct. R. 6.411. The court, nevertheless, denied relief:

> [R]elief is not warranted in this case. The trial court's failure to properly inform the alternate jurors that they were being retained for service and to instruct the alternates upon excusal not to discuss the case with anyone, and even the potential error in failing to advise the jury to start deliberations anew with the newly seated juror, were not outcome determinative. At the hearing, Dudar expressly denied that he had spoken to anyone about the case between being released and then recalled to

> join the deliberating jury. Accordingly, the failure to properly retain and instruct Dudar in this regard did not affect the jury deliberations.
>
> Moreover, the jury did not begin their substantive deliberations until Dudar was seated. Bauman testified that in the half hour the jurors met on October 11, 2012, the jury selected him as the foreman, they read the instructions, and "discussed what evidence we may want to ask to have recalled for us to see." The jury "had not even really started any meaningful deliberations before [they] were excused." Bauman indicated that Dudar approved the jury's choice of foreman and was fully involved in the deliberation process. The jury began discussing the charges against defendant and taking polls on his guilt only after bringing Dudar up to speed. Dudar was present when the jury "spent a lot of time going over" the elements of the offenses. As a result, this error was also harmless. See *Tate*, 244 Mich.App at 567–568 (finding harmless error even in light of the court's specific instruction *not* to begin deliberations anew).

*Black*, 2015 WL 1814037 at *6.

"The Supreme Court has never 'specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations have begun.'" *Gordon v. Woods*, No. 16-2446, 2018 WL 746526, *2 (6th Cir. Feb. 7, 2018) (quoting *Claudio v. Snyder*, 68 F.3d 1573, 1575 (3d Cir. 1995)). Nor has the Supreme Court specifically required a trial court judge to advise an alternate juror not to discuss the case with anyone or to question that alternate juror when recalled to replace a seated juror. In addition, there is no clearly established federal law requiring a trial court to instruct the jury to begin deliberating anew after recall of a discharged alternate juror. *See Tate v. Bock*, 271 F. App'x 520, 523 (6th Cir. 2008) (state trial court's failure to instruct the jury to begin deliberating anew after the recall of a discharged alternate juror was not contrary to clearly established Federal law, as required for federal habeas relief).

The Sixth Amendment right to trial by jury encompasses the right to a fair trial by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Due process means a jury capable and willing to decide the case solely on the evidence before it,

and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The exposure of a juror or jury to "extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights . . . and a state court decision that conflicts with this rule may justify habeas relief under the standard set forth in the AEDPA." *Fletcher v. McKee*, 355 F. App'x 935, 937 (6th Cir. 2009). The right to an impartial jury imposes on the trial judge the duty to investigate allegations of external jury influences. *Remmer v. United States*, 347 U.S. 227, 229–30 (1954). "A defendant must 'do more than simply raise the possibility of bias.'" *Jackson v. Bradshaw*, 681 F.3d 753, 766 (6th Cir. 2012) (quoting *Remmer*, 347 U.S. at 230).

In this case, Dudar testified that he did not discuss the case with anyone outside the jury room from the time he was dismissed until his recall. Petitioner presents no evidence to contradict this testimony and the court finds none in the record. Petitioner's claim that an extraneous influence may have influenced the jury is meritless. Further, because there is no Supreme Court precedent requiring a trial court to instruct a newly-constituted jury to being deliberations anew, the Michigan Court of Appeals' decision cannot be said to be contrary to, or an unreasonable application of, Supreme Court precedent. This claim does not merit relief.

### C. Right to be Present

Petitioner next alleges a violation of his right to be present during a critical stage of his criminal proceedings. He states that he was not present when the trial court decided to seat the alternate juror and that this was a critical stage of the proceeding.

11

One of the "most basic" rights guaranteed by the Sixth Amendment's Confrontation Clause is "the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). *See also Rushen v. Spain*, 464 U.S. 114, 117 (1983) ("[T]he right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant."). In addition, a criminal defendant has a "due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (*quoting Snyder v. Massachusetts,* 291 U.S. 97, 105–06 (1934)).

The Michigan Court of Appeals held that the seating of the alternate juror in this case was not a critical stage of the proceedings:

> While initial jury selection is a critical stage of the proceedings, there is no legal support for describing as critical the juror substitution proceeding in this case. The substitution was more akin to an administrative task following the absence of a seated juror. And defendant's attorney was present to protect his rights if need be. Accordingly, we find no prejudicial violation of defendant's right to be present.

*Black*, 2015 WL 1814037 at *7.

Petitioner fails to show that the seating of an alternate juror was a "stage of the criminal proceeding . . . critical to its outcome" or that his absence compromised the fairness of the procedure. *Stincer*, 482 U.S. at 745. He also cites no clearly established federal law establishing the seating of an alternate juror as a critical stage of the trial, and the court is aware of no such authority. Further, defense counsel was present when the decision was made to substitute the alternate juror and there is no evidence that counsel did not defend the rights of Petitioner. *See United States v. Brown*, 571 F.2d 980, 987 (6th Cir. 1978) (finding defendant's absence during conference concerning the

12

dismissal of jurors did not implicate his right to be present where defense counsel was present and zealously represented defendant's rights). Under these circumstances, the Michigan Court of Appeals' decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Habeas relief will be denied on this claim.

### D. Ineffective Assistance of Counsel

Finally, Petitioner argues that counsel was ineffective in failing to consult with him before agreeing to recall an alternate juror to replace the tardy juror. He argues that counsel's failure to consult him was such an egregious mistake that prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648 (1984).

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of

reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. However, a petitioner need not demonstrate prejudice in instances where the circumstances arising in the case "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658.

The Michigan Court of Appeals denied this claim:

Defendant characterizes his claim as falling under the first *Cronic* scenario: the complete denial of counsel at a critical stage in the proceeding. *Cronic*, 466 U.S. at 659–660. This simply is not accurate. Defendant had counsel and that counsel was present at the proceeding. Defendant's real complaint is the failure of counsel to consult with him. This falls squarely under *Strickland*.

"[T]he Sixth Amendment right to effective assistance of counsel should not be translated into a right to be present at counsel's side wherever and whenever instantaneous consultation may be helpful to the defense." *Mallory*, 421 Mich. at 266. But when defendant cannot be at counsel's side, there are times when defendant needs to be consulted. "From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. "An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Florida v. Nixon*, 543 U.S. 175, 187; 125 S. Ct 551; 160 L. Ed 2d 565 (2004).

> There is no legal support for treating the decision made in this case—
> whether to call an alternate juror to replace a late juror—so important that
> counsel was required to consult with defendant. This was not a matter of
> "overarching defense strategy." And there was no reason to assume that
> the jurors had gotten far in their deliberations given that they had only
> been in the jury room for half an hour. This was a simple administrative
> decision made to avoid further delay of the trial. Accordingly, we discern
> no error in counsel's performance.

*Black*, 2015 WL 1814037 at *8–*9.

The substitution of an alternate juror for a tardy juror did not raise questions of "overarching defense strategy." *Nixon,* 543 U.S. at 560 (finding counsel must allow defendant to make only certain decisions, including "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal") (citation omitted). Instead, this was a tactical decision for which counsel was not required to obtain Petitioner's consent. *See Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("The adversary process could not function effectively if every tactical decision required client approval."). Petitioner has not shown that counsel acted outside the wide range of professionally competent assistance when he did not consult with Petitioner. Further, the Michigan Court of Appeals' rejection of Petitioner's claim that prejudice should be presumed under *Cronic* was in accord with Supreme Court precedent on this issue. *See Taylor,* 484 U.S. at 417–18. *Cronic's* presumption of prejudice is reserved for instances where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Nixon*, 543 U.S. at 190 (quoting *Cronic*, 466 U.S. at 659). Such was not the case here and prejudice should not be presumed and has not been shown. Habeas relief will be denied on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal the court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and quotation marks omitted). Because in this case reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, the court will deny a certificate of appealability.

## V. CONCLUSION

For the reasons set forth above, the court finds that Petitioner is not entitled to habeas corpus relief or a certificate of appealability. Accordingly,

IT IS ORDERED that the Petition for Writ of Habeas Corpus is DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED.

    s/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: March 6, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 6, 2019, by electronic and/or ordinary mail.

    s/Lisa Wagner
    Case Manager and Deputy Clerk
    (810) 292-6522